Lara S. Mehraban
Sheldon L. Pollock
Nancy A. Brown
Lindsay S. Moilanen
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-1100

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------:

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : 17 Civ. _____ (   ) |
| | : |
| Plaintiff, | : ECF CASE |
| | : |
| - against - | : COMPLAINT |
| | : |
| MICHAEL SCRONIC, | : JURY TRIAL |
| | : DEMANDED |
| Defendant. | : |
| | : |

-----------------------------------------------------------------:

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendant Michael Scronic ("Defendant" or "Scronic"), alleges as follows:

## SUMMARY

1.      Scronic engaged in a Ponzi-like scheme and made material misrepresentations to

investors and potential investors in his fictitious hedge fund.  Despite sustaining over $15 million

in investment losses and using their money for personal expenses, Scronic represented to

investors that their investments had seen substantial gains.

2.      Starting in approximately 2010, Scronic has raised money from friends and

acquaintances, mostly from his Westchester, New York-based community, in order to invest

primarily in a risky options trading strategy involving equity and index options and options on

futures contracts.

3.      At some point, Scronic began identifying himself as an investment adviser to a fictitious hedge fund, Scronic Macro Fund, in which he purported to sell interests, or "shares."

4.      Since April 2010, Scronic's personal brokerage account, in which he deposited investor funds, has had cumulative deposits of $20.8 million, withdrawals of $2.9 million, and net investment losses of $15.8 million.[1]  He lost 88% of net investor deposits in trading losses between April 2010 and August 2017, experiencing losses in 79 out of the 89 months.

5.      Short of assets to honor investor requests for redemptions, Scronic resorted to paying them off with new monies raised from new or existing investors.

6.      In addition to the lies Scronic told to entice further investments, Scronic also sent materially false quarterly updates to existing investors about the status of their investments. According to the quarterly statements for the period ending June 30, 2017, Scronic reported to investors total assets of at least $21,837,475.

7.      However, the balance in his brokerage account on June 30, 2017 was slightly less than $27,500.

8.      More recently, with little cash left in his investment account, Scronic has resisted investor redemption requests.  On or about August 8, 2017, one of Scronic's investors, Investor A, attempted to redeem his $200,000 investment with Scronic, plus the gains Scronic attributed to that investment.  Investor A had signed an investment agreement with Scronic providing a three-day redemption period.  Scronic has deflected Investor A's redemption requests, offering a series of excuses for his failure to return Investor A's money.  Scronic did not disclose his investment losses or personal use of funds to Investor A, or that the balance in Scronic's

---

[1]      The remainder of the $20.8 million consisted of fees and interest to the brokerage firm.

investment account as of July 31, 2017 was less than $6,000 in cash and securities.

      9.      To date, Investor A has not been able to redeem his funds.

## VIOLATIONS

      10.      By engaging in the conduct set forth in this Complaint, Defendant has violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

      11.      The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)]; Sections 21(d)(1) and 21(d)(5) of the Exchange Act [15 U.S.C. §§ 78u(d)(1) and 78u(d)(5)]; and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)].

      12.      The Commission seeks a final judgment:  (a) restraining and permanently enjoining Defendant from engaging in the acts, practices, and courses of business alleged against him herein and from committing future violations of the above provisions of the federal securities laws; (b) ordering Defendant to disgorge any ill-gotten gains he received and to pay prejudgment interest thereon; (c) ordering Defendant to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and (d) ordering such other and further relief as the Court may deem just and proper.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), 20(e), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), 77t(e), and 77v(a)]; Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa]; and Sections 209(d), 209(e), and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e), and 80b-14].

14.     Venue is proper in the Southern District of New York pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)]; Section 27 of the Exchange Act [15 U.S.C. § 78aa]; and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].  Defendant resides in Pound Ridge, New York, within the Southern District of New York.  Certain transactions, acts, practices, and courses of business constituting the violations alleged herein occurred within the Southern District of New York.  For instance, Defendant solicited investors within, and made misstatements to those investors within, Westchester County.

15.     Defendant, directly and indirectly, has made use of the means and instrumentalities of interstate commerce, of the mails and wires, and/or of the facilities of a national securities exchange in connection with transactions, acts, practices, and courses of business alleged herein.

## DEFENDANT

16.     **Scronic**, age 46, resides in Pound Ridge, New York.  Scronic was a registered representative associated with Morgan Stanley from August 1998 to October 2005.  Scronic is not currently registered in any capacity with the Commission.  Scronic received an undergraduate degree from Stanford University and a master's degree from the University of Chicago.

## RELEVANT ENTITY

17.     **Scronic Macro Fund**, a/k/a Scronic Fund, ("SMF"), is the name of the fictitious hedge fund for which Scronic claimed to be an investment adviser.  Certain statements and communications to investors refer to their "shares" in SMF.  Neither Scronic Macro Fund nor Scronic Fund is registered with the Commission in any capacity.  Neither Scronic Macro Fund nor Scronic Fund is a formal corporate entity.  Rather, SMF is a nominee name used by Scronic to perpetrate his fraud.

## FACTS

### I.     DEFENDANT'S FRAUDULENT OFFERING

18.     Scronic solicited friends and acquaintances, many from his suburban community, to invest in SMF, a fictitious hedge fund he claimed to manage.

19.     As of June 30, 2017, Scronic had at least 42 investors.  Investment amounts varied per investor from $23,000 to $2.4 million.

20.     Scronic asked investors to wire money to one of his personal checking accounts, but sometimes also accepted checks for deposit in those checking accounts.  Scronic then transferred those funds to his personal brokerage account.  Scronic never segregated the investor money by investor.

21.     Scronic entered into investment agreements with many of his investors.  Those agreements provide that:

- monies will be invested in SMF;

- Scronic is acting as an investment adviser;

- Scronic will provide quarterly reports of investment performance for SMF as a whole and client accounts;

- SMF will invest in options markets;

- fees will be 1% of assets under management plus 20% of profits;

- investors can redeem in three business days;

- Scronic is in compliance with all federal and state laws pertaining to the operation
  of a fund; and

- Scronic has a fiduciary duty to his investors.

22.     Scronic provided investors with quarterly account statements.  These updates
generally took the form of an email from Scronic's email account with a one-line computation
showing the value of the investor's initial investment, the investor's purported gain for that
quarter, and the amount of purported fees paid to Scronic.  For the quarter ending June 30, 2017,
Scronic began sending more traditional-looking statements, also from his email account,
showing each investor's beginning account value, purported earnings during the quarter, account
value, number of shares purportedly held in SMF, and net asset value per share.

23.     Scronic also sent investors periodic updates communicating economic/market
developments, his views on those developments, and his planned investment strategies.  Scronic
attempted to convey macroeconomic and global trends to his investors using complicated
vocabulary in an attempt to demonstrate his mastery of the markets and investment acumen.

24.     Throughout, Scronic used investor funds to make risky investments in equity and
index options and options on futures contracts in his personal brokerage account.  He sustained
dramatic and consistent losses.  Overall, since April 2010, Scronic's brokerage account has had
cumulative deposits of $20.8 million, withdrawals of $2.9 million, and investment losses of
$15.8 million.  About half of the investment losses were attributable to equity or index options,
and the other half were attributable to options on futures contracts.

6

25.     Most recently, during the period of January 2015 through July 2017,
approximately $10.4 million was deposited to Scronic's brokerage account and $2.2 million was
withdrawn, in large part in transfers to Scronic's personal bank accounts.  As of the end of July
2017, the brokerage account had under $6,000 in assets.

## II.     DEFENDANT'S MISREPRESENTATIONS AND OMISSIONS TO INVESTORS

### A.  General Misrepresentations and Omissions to Investors

26.     Despite sustaining dramatic and consistent losses in his brokerage account,
Scronic falsely represented to investors that their investments with him were profitable.

27.     In early July 2017, Scronic provided quarterly statements to investors for the
quarter ending June 30, 2017.  These quarterly statements indicated SMF had aggregate holdings
of at least $21,837,475.  These statements further indicated that the quarterly return for most
investors was about 4.8%, though one investor's statement reported a quarterly return of 10.7%.

28.     However, in reality, as Scronic knew or recklessly disregarded, Scronic's
brokerage account statements reflect a balance of just under $27,500 as of June 30, 2017.  76%
of that sum was in cash and 24% was a long call option.

29.     The quarterly investor statements prepared by Scronic also showed that during the
quarter ending June 30, 2017, investors deposited $650,000 and withdrew $700,000, indicating
that all additional money invested during that period was used to pay the redemption requests of
other investors.

30.     Scronic did not disclose his investment losses or his use of new investments to
pay redemptions to investors at any point in time.

31.     In quarterly statements and emails, Scronic told investors that at the end of each
quarter, he moved 97-100% of assets into cash, leaving only 0-3% invested in the markets.  In

other words, Scronic claimed that he harvested profits at the end of each quarter in order to reset the profit and loss on his investments.

32.     However, as Scronic knew or recklessly disregarded, those statements were false. Scronic did not liquidate investments at the end of each quarter, and, in fact, was consistently realizing enormous market losses in nearly every month, wiping out the majority of investor funds.

33.     Scronic told investors they owned "shares" in SMF, and sent them quarterly statements that showed their "shares held" and "net asset value" per share.  Those statements, too, were false because, as Scronic knew or recklessly disregarded, SMF did not exist, and he had simply commingled all of his investors' money in his own bank and brokerage accounts.

### B.  Misrepresentations and Omissions to Investor A

34.     Investor A, a resident of Westchester County, invested $100,000 with Scronic in or around December 2, 2015.

35.     Prior to Investor A's initial investment, Scronic knowingly or recklessly represented to Investor A that his strategy and portfolio had been historically profitable. Specifically, on November 30, 2015, Scronic wrote to Investor A that since 2010 "the average rate of return has been about 18%" and from 2015 to date "it stands at 21%."

36.     After Investor A's initial investment, Scronic emailed reports to Investor A showing quarterly investment returns of between 4-7% on his investment and for SMF overall.

37.     However, as detailed above in paragraphs 24-25, Scronic's representations about SMF's profitability were false; Scronic consistently sustained severe losses prior to and during Investor A's investment period.

38.     In June 2017, Scronic began pressuring Investor A to invest more, in order to take

advantage of an alleged upcoming market opportunity.  Investor A sent Scronic another

$100,000 in June 2017, bringing his total principal investment to $200,000.

39.     Prior to his first investment, Investor A had sought and received false assurances

from Scronic about the liquidity of his investment, which was important to Investor A because he

was starting a new business.   On November 12, 2015, Scronic assured Investor A that he could

redeem quickly: "what's cool about my fund is that i'm [sic] only in publicly traded options and

cash so any redemptions are met within 2 business days so if you do need to withdraw for your

business needs it will be quick and painless."  Scronic also confirmed the three-day redemption

term orally with Scronic.

40.     On November 30, 2015, Investor A wrote: "We're going to put $100k in, as long

as we can redeem within a couple days['] notice . . . I believe the agreement says 3 days, which

is great."

41.     Scronic and Investor A then entered into a signed investment agreement on

December 2, 2015 which included all of the provisions noted in paragraph 21 above.

42.     Scronic's representations that Investor A could redeem his investment on 2-3

days' notice were knowingly or recklessly false.

43.     As of June 30, 2017, Scronic's investment account (for all investors) was valued

at only $27,376.  Nonetheless, Investor A's quarterly update, prepared and sent to him by

Scronic in July 2017, falsely represented that, for the period ending June 30, 2017, Investor A's

$200,000 investment was valued at $223,283 and 98% of that investment was held in cash.

44.     Believing that his investment had grown to more than $223,000, as reflected on

the quarterly statement Scronic had sent him, on or about August 8, 2017, Investor A attempted

to redeem his shares.

45.     In response to Investor A's August 8 redemption request and several subsequent requests, Scronic made a variety of misleading excuses.  Scronic initially told Investor A he could not process his withdrawal for at least another two weeks, then ignored his emails, then sent an email informing Investor A of a change in his email address from Yahoo to a Gmail account because his Yahoo account was a mess, and finally told Investor A that redemptions could only be made on a quarterly basis, notwithstanding his prior representations.[2]

46.     In the communications about Investor A's redemptions, Scronic represented to Investor A that the "fund is now positive for the quarter."  Scronic's representation was knowingly or recklessly false.

47.     Scronic intentionally or recklessly failed to tell Investor A that he did not have funds to honor Investor A's redemption request.

## III.   DEFENDANT'S USE OF INVESTOR FUNDS

48.     The investor funds obtained by Scronic were deposited to his various personal bank accounts.  From there, he sent most of the funds to his brokerage account, losing most of it in options and futures trading.

49.     Scronic used other investor funds to pay his personal expenses, including at least $105,000 to pay off his personal American Express credit card bills.

## IV.   DEFENDANT'S CONCEALMENT OF HIS SCHEME

50.     Scronic concealed his scheme and losses from investors.  In order to perpetrate his fraud, Scronic created a fictitious hedge fund, SMF, for which he solicited investments and

---

[2]     Scronic gave similar misleading excuses to other investors seeking to redeem some or all of their investment in July 2017, making similar false statements to reassure them that their investment was safe.  For example, on or about August 15, 2017, Scronic told Investor B: "200k of yours has been siting [sic] in cash as we had talked about in June and will be redeemed around month end. The other 200k will be redeemed with regards to this new policy at quarter end." As of August 15, 2017, Scronic did not have $200,000 in his brokerage account.

purported to provide account statements reflecting his fictional trading success to investors.

51.     Scronic also controlled multiple checking accounts, as well as his brokerage account.  Scronic frequently moved money from one account to another in an attempt to conceal the source and use of funds from his banks and brokerage firm.

52.     As described above, on certain occasions when investors sought to redeem their investments, Scronic either ignored their requests or made excuses for his delay in honoring those redemptions.

53.     On other occasions, in order to conceal the losses in his account and pay out redemption requests, and further his fraudulent scheme, Scronic solicited new investors or additional funds from existing investors.  For example, the quarterly statements that Scronic sent to investors show that during the period ending June 30, 2017, investors deposited $650,000 and withdrew $700,000, indicating that investor money received during that period was used to pay redemption requests.

## FIRST CLAIM FOR RELIEF
### (Violations of Section 17(a) of the Securities Act)

54.     The Commission re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 53 of this Complaint.

55.     By engaging in the conduct described above, Defendant, in the offer or sale of securities, knowingly, recklessly, or negligently, by the use of means or instruments of transportation or communication in interstate commerce or the mails, directly or indirectly:

      a.     Employed devices, schemes, or artifices to defraud;

      b.     Obtained money or property by means of untrue statements of material facts, or omissions to state material facts necessary in order to make the

statements made, in light of the circumstances under which they were

made, not misleading; and/or

c.      Engaged in transactions, practices, or courses of business which operated

or would operate as a fraud or deceit upon the purchaser.

56.     By engaging in the foregoing conduct, Defendant violated, and unless restrained

and enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### SECOND CLAIM FOR RELIEF
**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder)**

57.     The Commission re-alleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 through 53 of this Complaint.

58.     By engaging in the conduct described above, Defendant knowingly or recklessly,

in connection with the purchase or sale of securities, directly or indirectly, by the use or means or

instrumentalities of interstate commerce, or the mails, or the facilities of a national securities

exchange:

a.      Employed devices, schemes, or artifices to defraud;

b.      Made untrue statements of material facts or omitted to state material facts

necessary in order to make the statements made, in light of the

circumstances under which they were made, not misleading; and/or

c.      Engaged in acts, practices, or courses of business which operated or would

operate as a fraud or deceit upon any person.

59.     By engaging in the foregoing conduct, Defendant violated, and unless restrained

and enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b))]

and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF
### (Violations of Sections 206(1), 206(2), and 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder)

60.     The Commission re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 53 of this Complaint.

61.     By engaging in the conduct described above, Defendant, while acting as an investment adviser, by use of the means and instrumentalities of interstate commerce and of the mails, directly or indirectly:

      a.     employed devices, schemes, or artifices to defraud clients and prospective clients;

      b.     engaged in transactions, practices, or courses of business which operate as a fraud or deceit upon clients and prospective clients; and

      c.     engaged in acts, practices, or courses of business which are fraudulent, deceptive or manipulative.

62.     By engaging in the foregoing conduct, Defendant violated, and unless restrained and enjoined, will continue to violate Sections 206(1), 206(2), and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)], and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court enter a Final Judgment:

      a.     Finding that Defendant violated the securities laws and rules promulgated thereunder as alleged against herein;

      b.     Permanently restraining and enjoining Defendant, his agents, servants, employees, attorneys, and all persons in active concert who receive actual notice of the

injunction, and each of them from, directly or indirectly, violating or aiding and abetting violations Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1) , 206(2), and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8];

c.  Ordering Defendant to disgorge all ill-gotten gains plus pre-judgment interest thereon, and such other and further amount as the Court may find appropriate;

d.  Ordering Defendant to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]; and

e.  Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

Dated: October 5, 2017
        New York, New York

Respectfully submitted,

Lara S. Mehraban
Sheldon L. Pollock
Nancy A. Brown
Lindsay S. Moilanen
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Room 400
New York, New York 10281
(212) 336-1100